UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SHAW,

Plaintiff,

v. Case No. 04-75062
Hon. Sean F. Cox

MRO SOFTWARE, INC.,

Defendant.

---

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for summary judgment. Both parties have fully briefed the issues and a hearing was held on October 19, 2006. For the following reasons, the Court **GRANTS** Defendant's Motion for summary judgment[1] on Plaintiff's claims of breach, unjust enrichment, and under the Michigan Sales Representative Act.

## I. BACKGROUND

This action arises out of Defendant's failure to pay sales commissions to Plaintiff on two software sales.

Plaintiff, Richard Shaw, is a software sales representative. He was employed by Defendant, MRO Software, Inc., in 1998. In July 2004, Defendant terminated Plaintiff's

[1]Although Defendant styles its Motion as one for "summary judgment" it is properly considered as one for "partial summary judgment" because Defendant did not seek summary judgment on all of Plaintiff's claims. Accordingly, notwithstanding this Order, Plaintiff's claims for anticipatory breach and fraud remain.

employment. None of Plaintiff's claims arise from his termination. Defendant presented Plaintiff with a "Separation Agreement" that allowed Plaintiff to continue working and earning commissions for three months. Plaintiff signed the agreement and his employment was extended until September 30, 2004.

Under the separation agreement, Plaintiff was paid commissions according to the Senior Sales Consultant Incentive Plan ("compensation plan"). The compensation plan provided that "100% of all software sales recognized revenue generated solely by the Senior Sales Consultant in his/her territory" would be counted towards the senior sales consultant's quota. The quota is used to determine commission payments. Both the separation agreement and the compensation plan are governed by Massachusetts law.

Both parties agree that the compensation plan is to be interpreted consistently with the US Generally Accepted Accounting Principles ("GAAP"), and the US Generally Accepted Auditing Standards ("GAAS").

In this action, Plaintiff contends he was not paid for two software sales transactions. Defendant argues Plaintiff was not paid because Defendant did not possess the purchase order by September 30, 2004. Hence, the transaction was not considered "recognized revenue." Plaintiff challenges whether Defendant had to be in possession of the purchase order in order to credit Plaintiff with the sale.

The first transaction at issue is with Delphi Corporation ("Delphi"). It is undisputed that Delphi dated a purchase order for nearly $600,000, September 30, 2004. However, Defendant was not in possession of the purchase order until October 1, 2004.

The other transaction at issue is with General Motors ("GM"). GM agreed to a purchase

totaling over $3 million. A purchase order was issued for $1.1 million, and Plaintiff was paid the commission. However, purchase orders were not issued for the outstanding amount until December 2004 and March 2005. Plaintiff was not paid commissions on those purchase orders.

It is undisputed that Defendant possessed a signed license agreement for the GM and Delphi sales prior to September 30, 2004. At the hearing, the parties conceded that shipment also occurred prior to September 30, 2004.

On December 28, 2004, Plaintiff filed a Complaint alleging: (1) breach of contract based on the sale to Delphi; (2) breach of contract based on the sale to General Motors; (3) violation of the Michigan Sales Representative Act; (4) anticipatory breach; and, (5) fraud.

Defendant filed a Motion for summary judgment on May 8, 2006. Defendant also amended its answer to add a counterclaim for Plaintiff's alleged breach of the separation agreement. Because the claim was not added until after the instant Motion was fully briefed, it is not properly considered as part of this Motion.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d

171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

### A. The Release Provision

The parties dispute whether Plaintiff's claims are barred under the release provision of the separation agreement. The provision reads, in pertinent part:

> 5. Waiver and Release. In consideration of the continuation of his employment and all associated benefits through the Termination Date as set forth in Section 1 of this Agreement, to which Mr. Shaw acknowledges he would not otherwise be entitled, Mr. Shaw hereby releases and forever discharges to the full extent permitted by law, MRO Software, Inc...from any and all claims...of any kind...which the undersigned employee ever had, now has, or may have, *from the beginning of this world* ***to the date of this Release***...

The separation agreement, containing the Release, was signed on July 21, 2004. Plaintiff's claims did not arise until the Defendant failed to pay commissions on the GM and Delphi sales, that allegedly should have been recognized revenue by September 30, 2004.

The release provision does not bar Plaintiff's claims.

### B. Breach of the Separation Agreement

#### 1. Did Defendant literally breach the separation agreement?

The parties agree that Plaintiff was governed by the separation agreement, which required commissions to be paid in accordance with the compensation plan. It is undisputed that the compensation plan incorporates by reference GAAP and GAAS.

Plaintiff contends Defendant breached the separation agreement because it failed to

recognize the revenue consistent with GAAP. Specifically, GAAP contains Statement of Position 97-02 ("SOP 97-02"). According to Plaintiff, the compensation plan only requires that the four criteria of SOP 97-02 be met in order to recognize revenue. SOP 97-02 states:

> If the arrangement does not require significant production, modification, or customization of software, revenue should be recognized when all of the following criteria are met.
>
> - Persuasive evidence of an arrangement exists.
> - Delivery has occurred.
> - The vendor's fee is fixed or determinable.
> - Collectibility is probable.

The compensation plan states that "100% of all software sales recognized revenue" will be credited toward the sales consultant's quota. The compensation plan states that "[r]ecognition of software license revenue requires a signed license agreement, purchase order and shipment to the end user and meet all audit requirements." [Motion, Exhibit C, p.2154]. The language from the compensation plan is clear and unambiguous in that a purchase order is required, in addition to a signed license agreement and shipment, in order for the revenue to be recognized by Defendant.

Nonetheless, Plaintiff asserts that the compensation plan is inconsistent because it requires revenue recognition to be done consistently with GAAP and GAAS, and specifically SOP 97-02. Plaintiff asserts that SOP 97-02 does not require a purchase order where there is a signed license agreement; while the terms of the compensation plan require a purchase order even where there is a signed license agreement before revenue will be recognized.

Because the contract in Plaintiff's view is inconsistent, *i.e.* ambiguous, Plaintiff

concludes that it must be construed in his favor because Defendant is the drafter of the contract. Plaintiff argues that if the contract is construed in his favor, the revenue from the GM and Delphi sales should have been recognized without the purchase order, and Defendant breached the contract when it failed to recognize the revenue.

Although the Court does not so hold, assuming *arguendo*, that Plaintiff is correct and the contract is ambiguous because the criteria to recognize revenue is inconsistent, Plaintiff still does not establish a breach of contract.

The First Circuit, applying Massachusetts law, held that while "courts sometimes construe uncertain contract language against the drafter...the canon has little to do with actual intentions and should only be used, as a last resort, if other aids to construction leave the case in equipoise." *National Tax Institute, Inc. v. Topnotch At Stowe Resort and Spa*, 388 F.3d 15, 18 (1st Cir. 2004). See also *Hubert v. Melrose-Wakefield Hospital Association*, 40 Mass.App. 172, 177 (Mass.App. 1996)("The rule of construction that contract ambiguities must be resolved against the drafter must give way to the primary and inflexible rule that contracts, are to be construed so as to ascertain the true intention of the parties.").

"To enable us to understand the subject matter of the agreement, to the extent it is doubtful or ambiguous, we resort to the conduct of the parties to determine the meaning that they themselves put upon any doubtful or ambiguous terms." *Lembo v. Waters*, 1 Mass.App. 227, 233 (Mass.App. 1973). See also *Massachusetts Municipal Wholesale Electric Company v. Town of Danvers*, 411 Mass. 39, 59 (1991)("The conduct of the parties after the signing of the agreements is also indicative of their intent."). Plaintiff's deposition testimony leaves little doubt that he understood the terms of the compensation plan to require a purchase order in

addition to a licensing agreement before revenue would be recognized.

Q. Look at the second sentence, please, of section 3A, which says, recognition of software license revenue requires a signed license agreement, purchase order, and shipment to the end user and meet all audit requirements. Do you see that?

A. Yes.

Q. Did you have any understanding of what that meant?

A. Yes.

Q. What was your understanding of what that meant?

A. I would be paid a commission based on signed license agreements, shipping of software, and purchase orders.

[Motion, Exhibit B, p.26].

Q. Were there any promises other than those made in this agreement, Exhibit 4, with respect to how you would be paid commissions at MRO?
Put it another way, did anybody verbally say we promise you something that's not in this agreement?

A. No.

[Motion, Exhibit B, p.37].

Q. Okay. Do you recall that you need a purchase order in order to recognize revenue within the quarter in which revenue is to be recognized?

Q. Do you recall that being discussed?

A. Yes.

Q. During 2004?

A. Yes.

[Motion, Exhibit B, p.63].

Q. And did you understand that, if the client or customer didn't issue the purchase order before the quarter ended, you don't have a deal for revenue

recognition purposes within that quarter?

A. Yes.

[Motion, Exhibit B, p.75].

Moreover, it is clear that Plaintiff also understood that Defendant must possess the purchase order before it would recognize revenue.

Q. Okay. Their guidelines were that MRO should have the purchase order hard copy in its possession?

A. That's what was defined to me by Bill Bowen.

Q. So, your understanding was at the time that a purchase order - a valid purchase order before the end of the quarter meant to MRO in our possession?

A. That was MRO's guideline.

[Motion, Exhibit B, p.90].

Further, Plaintiff offered to drive from his home in Howell, Michigan, to Kokomo, Indiana, to pick up a hard copy of the Delphi purchase order on September 30, 2004, to ensure receipt by Defendant. [Motion, Exhibit B, pp.87-89].

The intent of the parties with respect to the compensation plan is clear. As both parties understood the terms, a purchase order was required to be in Defendant's possession, even where it already possessed a signed license agreement, before revenue would be recognized. Plaintiff's conduct and testimony is consistent with this interpretation. Additionally, there are no allegations, much less evidence, that Defendant ever recognized revenue without possession of a purchase order.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for breach of the separation agreement for failure to recognize the revenue from the GM and Delphi sales.

**2. Did Defendant Commit a Bad Faith Breach of the Separation Agreement?**

Even if Defendant did not literally breach the terms of the separation agreement, Plaintiff claims Defendant breached the covenant of good faith and fair dealing. The parties agree that the separation agreement implied a covenant of good faith and fair dealing. [Motion, p.15; Response, p.8]. Plaintiff argues Defendant breached the covenant of good faith, *i.e*. acted in bad faith, because it had the discretion to recognize the revenue from the GM and Delphi sales without a purchase order and chose not to in order to prevent Plaintiff from obtaining commissions. Defendant denies that it had discretion to recognize the revenue without a purchase order, relying on its policies

Again, assuming without deciding that Plaintiff is correct and Defendant did have discretion to recognize the revenue from the GM and Delphi sales without a purchase order, Defendant is nonetheless entitled to summary judgment.

"Every contract in Massachusetts is subject, to some extent, to an implied covenant of good faith and fair dealing." *Ayash v. Dana-Farber Cancer Institute*, 443 Mass. 367, 385 (2005). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471 (1991). "The covenant may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Ayash*, 443 Mass. at 385.

Plaintiff failed to present evidence to support an inference that Defendant acted with bad faith when it failed to recognize the revenue. Assuming Defendant had discretion, failure to exercise discretion in Plaintiff's favor, without more, does not equate to bad faith. "There is no

general duty on the part of an employer to act nicely." *Id.* at 385.

In *Gram v. Liberty Mutual Ins. Company*, 384 Mass. 659 (1981), the Court held that an employer's obligation of good faith and fair dealing does not equate with good cause. *Id*. at 668. In that case, the plaintiff challenged the motive behind his termination. The Court held that "[c]ertainly good cause to discharge an employee would tend to negate the existence of bad faith in the decision to discharge an employee...[b]ut termination in the absence of good cause does not establish bad faith..." *Id*. The Court found the plaintiff did not present evidence of bad faith; it noted that the plaintiff did not present evidence that the matter of the plaintiff's commission was considered in the decision to terminate him.

In *Nadherny v. Roseland Property Company*, 390 F.3d 44 (1st Cir. 2004), the court found that pursuant to Massachusetts law, the plaintiff's evidence on his good faith breach claim was insufficient. In *Nadherny*, the plaintiff's employment with a real estate developer was terminated allegedly because he had performance problems. The plaintiff brought a claim for breach of the covenant of good faith, asserting that the defendant terminated him to deprive him of his participation interest in the defendant's projects. However, the plaintiff offered no evidence that he did not have performance problems. Rather, the plaintiff relied on the fact that he was not informed that he would be terminated if his performance did not improve; and that a memo stated he had exceptional site preparation skills and good selection of personnel to support his claim of bad faith.

Here, assuming Defendant *could have* recognized revenue without a purchase order, Plaintiff does not present any evidence that Defendant's decision not to recognize the revenue was *motivated by* a desire to prevent Plaintiff from obtaining commissions. There is no evidence

that whether Plaintiff would receive commissions factored in to the decision on whether to recognize the revenue by September 30, 2004. Further, Plaintiff does not present any evidence that Defendant did not generally adhere to its policy of requiring a purchase order before recognizing revenue. Plaintiff does not identify any instance where revenue was recognized when the purchase order was not received. The only evidence offered by Plaintiff is that Defendant could have recognized the revenue, and that by not doing so, Plaintiff was not paid commissions. In order to succeed on his claim, Plaintiff is required to put forth some evidence of bad faith, because he did not, Defendant is entitled to summary judgment. See *Nadherny*, *supra*; *Equipment & Systems For Industry, Inc. v. Northmeadows Construction Company, Inc.*, 59 Mass.App. 931, 932 (Mass.App. 2003); and *Christensen v. Kingston School Committee*, 360 F.Supp.2d 212, 226-227 (D.Mass. 2005).

**C. Michigan Sales Representative Act**

Plaintiff alleges violation of the Michigan Sales Representative Act ("MSRA") pursuant to MCL §600.2961. Under the MSRA, an employer is liable if it fails to pay "commissions that are due at the time of termination of a contract between a sales representative and principal" within a specified amount of time. MCL §600.2961(4). "The terms of the contract between the principal and sales representative shall determine when a commission becomes due." MCL §600.2961(2).

Defendant argues that by the terms of the separation agreement and compensation plan, no commissions were due to Plaintiff. Plaintiff fails to establish a genuine issue of fact that any commissions were due. Accordingly, Defendant is entitled to summary judgment on this claim.

Defendant also argues it is entitled to reasonable attorney fees and costs. The MSRA

provides that "the court shall award the prevailing party reasonable attorney fees and court costs." MCL §600.2961(6). A prevailing party is defined as "a party who wins on all the allegations of the complaint or on all of the responses to the complaint." MCL §600.2961(1)(c).

The statute states that the court "shall" award attorney fees, the court does not have discretion. Accordingly, because it is the prevailing party on Plaintiff's MSRA claim, Defendant is entitled to ***reasonable*** attorney fees and court costs.

**D. Unjust Enrichment**

Defendant claims it is entitled to summary judgment on Plaintiff's unjust enrichment claim because there is an express contract covering the same subject matter. Plaintiff argues that it is arguing unjust enrichment as an alternative theory of recovery in the event the separation agreement is void. However, neither party asserts that the separation agreement is void.

"In order to sustain a claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corporation v. City of Detroit*, 256 Mich.App. 463, 478 (Mich.App. 2003)(citation omitted). "If this is established, the law will imply a contract in order to prevent unjust enrichment." *Id*. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id*.

Here, Plaintiff asserts a theory of unjust enrichment to recover the commissions from the GM and Delphi sales. There is an express contract, *i.e.*, the separation agreement, which incorporates the compensation plan, covering the same subject matter. Accordingly, Defendant is entitled to summary judgment on this claim.

**E. Remaining Claims**

In his Complaint, Plaintiff asserts claims for anticipatory breach and fraud. Defendant did not seek summary judgment on these claims. Thus, the claims remain.

Additionally, Defendant amended its Answer to add a counterclaim on September 28, 2006. The counterclaim was not considered as part of this Motion, and that claim also remains.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for summary judgment with respect to Plaintiff's claims for breach, unjust enrichment, and the Michigan Sales Representative Act.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated: October 27, 2006**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on October 27, 2006, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**